MORGAN, LEWIS & BOCKIUS LLP
Carrie A. Gonell, Bar No. 257163
David J. Rashé, Bar No. 318400
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Tel: +1.714.830.0600
Fax: +1.714.830.0700
carrie.gonell@morganlewis.com
david.rashe@morganlewis.com

Attorneys for Defendant
RAISING CANE'S USA, L.L.C.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH XATRUCH, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>RAISING CANE'S USA, L.L.C.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-03341-DJC-SCR<br><br>*Hon. Daniel J. Calabretta*<br><br>**DEFENDANT RAISING CANE'S USA, L.L.C.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: February 5, 2026<br>Time: 1:30 p.m.<br>Courtroom: 7<br><br>Action Filed: October 10, 2025<br>Removal Filed: November 17, 2025<br>Trial Date: None Set |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. DEFENDANT COMPLIED WITH THE COURT'S PRE-FILING MEET AND CONFER REQUIREMENTS ..... 2

III. LEGAL ARGUMENT ..... 3

A. The Evidence Confirms Plaintiff Agreed to Arbitrate Her Claims ..... 3

B. The FAA Requires Severance and Enforcement of the Delegation Clause ..... 6

C. The Arbitration Agreements, As a Whole, Are Not Unconscionable ..... 8

1. Any Procedural Unconscionability Is Minimal ..... 8

2. Plaintiff Failed to Establish Any Substantive Unconscionability ..... 9

3. Any Unconscionable Term Can Be Cured by Severance ..... 14

D. The Class Action Waiver Provision Must Be Enforced ..... 14

E. A Stay Is Mandatory Pending Completion of Arbitration ..... 14

IV. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Foundation Health Psychare Servs., Inc.*, 24 Cal. 4th 83 (2000) .......... 10, 13

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 14

*Atkins v. Amplitude, Inc.*, 2025 WL 2521732 (N.D. Cal. Sept. 2, 2025) .......... 11

*Badgerow v. Walters*, 596 U.S. 1 (2022) .......... 15

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) .......... 7

*Davis v. Experian Information Sols., Inc.*, 2025 WL 2998157 (N.D. Cal. Oct. 24, 2025) .......... 11

*Duval v. Costco Wholesale Corp.*, 2023 WL 3852694 (N.D. Cal. June 5, 2023) .......... 5

*Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) .......... 14

*Faulk v. JELD-WEN, Inc.*, 159 F.4th 618 (9th Cir. 2025) .......... 15

*Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849 (E.D. Cal. 2024) (Calabretta, J.) .......... 13

*Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105 (1999) .......... 8

*Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. 3d 1132 (E.D. Cal. 2025) (Calabretta, J.) .......... 1, 3, 4, 5

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223 (2012) .......... 4, 9

*Poublon v. C.H Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017) .......... 12, 13

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) .......... 7

*Prostek v. Lincare Inc.*,
662 F. Supp. 3d 1100 (E.D. Cal. 2023) ....................................................................4

*Ramirez v. Charter Commc'ns, Inc.*,
16 Cal. 5th 478 (2024)....................................................................................12, 14

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)...............................................................................................7

*Rodriguez v. Am. Techs., Inc.*,
136 Cal. App. 4th 1110 (2006) .........................................................................11

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025).............................................................................................15

*Shamblin v. Andy Frain Servs., Inc.*,
2024 WL 1199478 (E.D. Cal. Mar. 20, 2024) (Calabretta, J.)..................................8

*Smith v. Spizzirri*,
601 U.S. 472 (2024).....................................................................................14, 15

*Southland Corp. v. Keating*,
465 U.S. 1 (1984).................................................................................................6

*Tesla Motors, Inc. v. Balan*,
134 F.4th 558 (9th Cir. 2025) ...........................................................................15

*Tiri v. Lucky Chances, Inc.*,
226 Cal. App. 4th 231 (2014) ..............................................................................7

**Statutes**

9 U.S.C. § 1 ..................................................................................................6, 11

9 U.S.C. § 3 ................................................................................................14, 15

9 U.S.C. § 9-11 ...................................................................................................13

## I. INTRODUCTION

Raising Cane's USA, L.L.C.'s ("Raising Cane's") Motion set forth uncontroverted evidence establishing the manner in which it presented two arbitration agreements to Plaintiff Elizabeth Xatruch ("Plaintiff") for her to review and sign.[1] That evidence established the process by which Plaintiff signed the arbitration agreements in Workday by clicking the "I Agree" check-box associated with each arbitration agreement and then proceeding to click the "Submit" button to complete the electronic signature process.

Plaintiff does not seriously dispute that she entered into two enforceable arbitration agreements during her employment with Raising Cane's. Plaintiff concedes that Raising Cane's presented documents to her electronically using Workday and that she "remember[s] personally using" Workday to sign documents. (Declaration of Elizabeth Xatruch ("Plaintiff Decl.") ¶ 9.) Plaintiff's evidence in the form of her declaration stops short of denying signing the arbitration agreements, instead stating that she does not "recall" signing or reviewing the agreements. This Court has already found that an employee claiming "he does not remember signing the Agreement" when using Workday was "insufficient to create a material question of fact" as to whether the arbitration agreement was made. *Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. 3d 1132, 1139 (E.D. Cal. 2025) (Calabretta, J.). Moreover, Plaintiff attempts, but fails to dispute the security of her Workday account. Her evidence is purposefully generalized and non-specific to either of the instances where Raising Cane's evidence established that the electronic signature data associated with each of Plaintiff's agreements was the act of Plaintiff.

Furthermore, Plaintiff does not dispute that the Federal Arbitration Act ("FAA") governs each of her agreements nor does she raise a viable unconscionability challenge as to the agreements' delegation clauses (delegating to the arbitrator the authority to resolve disputes of enforceability) or the agreements as a whole. Because the preponderance of the evidence clearly establishes that the 2024 Agreement and 2025

---

[1] These agreements are referred to as the 2024 Agreement and 2025 Agreement, reflecting the year in which they were signed by Plaintiff.

Agreement exist between Plaintiff and Raising Cane's, the Court should enforce them and leave all delegated unconscionability challenges to the arbitrator to resolve.

## II. DEFENDANT COMPLIED WITH THE COURT'S PRE-FILING MEET AND CONFER REQUIREMENTS

Raising Cane's removed this action from state court on November 17, 2024. (Dkt. 1.) Because Raising Cane's did not file a response to Plaintiff's complaint prior to removal (*see generally id.*), its deadline to respond to Plaintiff's complaint was November 24, 2024. Fed. R. Civ. P. 81(c)(2)(C). Beginning November 7, 2025—before removal and assignment of this Action to this Court on November 21, 2024 (Dkt. 4)—Raising Cane's attempted to meet and confer with Plaintiff to discern whether Plaintiff would stipulate to arbitrate her claims in this action. (Declaration of David Rashe ("Rashe Decl.") ¶¶ 2-4, Exs. A-B.) About a week before filing the Motion, Raising Cane's counsel again raised arbitration, informing Plaintiff's counsel: "[W]e plan to file our motion by Monday, November 24, so please provide Plaintiff's position before then." (*Id.* ¶ 4, Ex. A at p. 1.)

On November 24, 2025, Raising Cane's counsel executed his declaration while on a personal vacation in Lahaina, Hawaii. (*See generally* Rashe Decl.; Supplemental Declaration of David Rashe ("Suppl. Rashe Decl.") ¶ 2.) As of the time counsel executed the declaration, Plaintiff had not provided a response indicating whether she would agree to stipulate to arbitrate her claims on an individual basis. (Rashe Decl. ¶ 4.) Immediately after executing his declaration, Raising Cane's counsel directed his office to file the Motion (Suppl. Rashe Decl. ¶ 2) and Raising Cane's filed the Motion that day.

Plaintiff's contention that the Motion should be summarily denied for a failure to meet and confer appears to rest on her counsel's email at 2:46 p.m. PT on November 24, 2025—the day of Raising Cane's responsive pleading deadline and received after Raising Cane's counsel sent the Motion to staff for filing (*Id.* ¶ 3)—stating that Plaintiff was "leaning toward opposing" the Motion and attempting to extract an agreement for a mediation so Plaintiff and her counsel could "reassess[] our position [on arbitration] afterward" if

mediation was unsuccessful. (Declaration of Nichelle Christopherson ("Christopher Decl.") ¶ 21, Ex. 1.) Plaintiff opposed the Motion two weeks later on December 8, 2025, but Plaintiff's counsel did not contact Raising Cane's counsel to further meet and confer prior to filing the Opposition. (Suppl. Rashe Decl. ¶ 4.)

Defendant began seeking Plaintiff's position on arbitration on November 7, 2025. The Motion should not be denied because Plaintiff withheld a clear, definitive response on this issue until late in the afternoon on the date of Raising Cane's responsive pleading deadline. Defendant respectfully submits that it fully complied with the Court's pre-filing meet and confer requirements and requests the Court consider the merits of the Motion.[2]

## III. LEGAL ARGUMENT

### A. The Evidence Confirms Plaintiff Agreed to Arbitrate Her Claims

Raising Cane's Motion established that each of Plaintiff's two arbitration agreements is authentic and was electronically signed by Plaintiff. (Mtn. 7:24-10:23, 14:12-15:18.) The evidence that Plaintiff signed the arbitration agreements is sufficient to establish that she assented to the terms of the agreements. *See Mitchell v. Lineage Logistics Servs. LLC*, 769 F. Supp. 3d 1132, 1139 (E.D. Cal. 2025) (Calabretta, J.) (mutual assent is determined by an objective standard looking at a party's outward manifestations). The Motion, supported by the declaration of Ashley Wynn, described in detail the process by which Plaintiff received and acknowledged both of her arbitration agreements using Raising Cane's online Workday platform (Mtn. at 7:24-10:23, 14:12-15:18), that only Plaintiff could access her Workday account using her own unique login ID and password

---

[2] Although not relevant to the Motion, the Christopherson Declaration discusses Raising Cane's service of the Notice of Removal on Plaintiff's counsel's office as well as service of this Court's Standing Order. (Christopherson Decl. ¶¶ 17-18.) Plaintiff's Opposition does not claim prejudice related to this Motion. Raising Cane's served a copy of this Initial Case Management Order and Standing Order on Plaintiff's counsel on December 9, 2025, immediately upon learning of this attorney oversight. (Suppl. Rashe Decl. ¶ 5; Dkt. 9.) Furthermore, Raising Cane's served the Notice of Removal on Plaintiff's counsel by email on November 17, 2025, at the email addresses for Mr. Kane Moon and Mr. Allen Feghali listed on the caption page of Plaintiff's complaint filed in state court in this action. (Suppl. Rashe Decl. ¶¶ 6-7, Exs. 1-2; Dkt. 1-2 (Ex. B to Notice of Removal). Moreover, Raising Cane's initial meet and confer emails to Plaintiff's counsel, dated November 7 and 15, 2025, were directed to Mr. Moon and Mr. Feghali at the same email addresses listed on Plaintiff's complaint. (Rashe Decl. ¶ 4, Ex. B.) Plaintiff's counsel never informed Raising Cane's counsel that these email addresses were incorrect prior to filing the Opposition. (Suppl. Rashe Decl. ¶ 8.)

(or mobile PIN), and that Raising Cane's does not have access to Plaintiff's Workday password or PIN. (*Id.* at 8:14-15, 18-21, 10:3, 8-11, 16-20, 14:26-27). Raising Cane's met its burden, which is "not high," *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1110 (E.D. Cal. 2023), to authenticate the agreements as arbitration agreements signed electronically by Plaintiff. Plaintiff fails to rebut this evidence (as discussed in detail below) and actually produced evidence corroborating Raising Cane's evidence. (*See* Plaintiff Decl. ¶ 9 (recalling "personally using the WorkDay application to sign documents."))[3] [4]

Plaintiff failed to address the application of this Court's prior order in *Mitchell*, cited in the Motion at 15:12-15, in which this Court found that the employer's proffered evidence of the process through which the plaintiff was presented with and signed the arbitration agreement on Workday—the same process used by Raising Cane's here and undisputed by Plaintiff—left "no reasonable inference [to be] drawn in Plaintiff's favor that the arbitration agreement does not exist or was not formed." *Mitchell*, 769 F. Supp. 3d at 1139. The plaintiff *Mitchell* failed to provide any evidence refuting the employer's evidence and therefore establishing that the arbitration agreement did not exist; he only stated in his declaration that "he does not remember signing the Agreement and disputes that any

---

[3] Plaintiff's statement that she "do[es] not recall ***needing*** to open the documents before checking the required boxes" (Plaintiff Decl. ¶ 9) is irrelevant to the fact that she was provided the opportunity to do so. Raising Cane's established that a document is presented to Crewmembers in Workday as a task. (Wynn Decl. ¶ 5.) Each document within a task is presented with a separate link to view the document. (*Id.*) In order to click the "Submit" button to complete the tasks containing Plaintiff's arbitration agreements, Plaintiff had to first check the box next to the words, "I Agree," which appeared below the signature statement for the arbitration agreements. (Wynn Decl. ¶¶ 6, 11.) If Plaintiff chose to click the boxes marked, "I Agree," and then proceeded to click the "Submit" button to complete the tasks containing her arbitration agreements without opening the links to the agreements, that choice was hers alone. *See Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.").

[4] Plaintiff's allegation that "no one told me what documents I was signing" (Plaintiff Decl. ¶ 9) is similarly irrelevant. Plaintiff does not dispute that the tasks containing her arbitration agreements and presented to her in Workday appeared in the form presented as Exhibit A to the declaration of Ashley Wynn, which put Plaintiff on notice the tasks concerned arbitration agreements. The tasks in Workday clearly identified the subject documents as a "Mutual Agreement to Arbitrate Claims." (Wynn Decl. ¶¶ 6, 11, Ex. A.) The "Instructions" for the tasks unmistakably directed Plaintiff to "review the Mutual Agreement to Arbitrate Claims and acknowledge as appropriate." (*Id.* ¶ 6, Ex. A.) Finally, the "Signature Statement" explained what was explained in the arbitration agreements themselves, i.e., that by agreeing, she would be required to arbitrate claims against Raising Cane's as permitted by law. (*Id.*)

signature was added by him." *Id.* Weighing the evidence, this Court concluded that "***Plaintiff's mere statement that he 'does not recall' seeing or signing the document [citation] is insufficient to create a material question of fact in light of Defendant's evidence to the contrary***, even when considering all evidence in the light most favorable to Plaintiff." *Id.* at 1140 (emphasis added).

Just as the plaintiff in *Mitchell*, Plaintiff failed to produce any evidence to create a material question of fact as to whether Plaintiff entered into either of her two arbitration agreements. First and foremost, Plaintiff does not contend that she did not ***sign*** the arbitration agreements or that the electronic signature data was not the product of her acts. Rather, she attests that she "do[es] not recall signing, reviewing, or being given a copy of any arbitration agreement" and "I do not recall signing either of these agreements." (Plaintiff Decl. ¶¶ 4-5.) This evidence is insufficient to create a material dispute as to whether Plaintiff electronically signed the arbitration agreements. *See Mitchell*, 769 F. Supp. 3d at 1139 (finding the plaintiff entered into the arbitration agreement despite his declaration he did not recall seeing or signing the agreement); *Duval v. Costco Wholesale Corp.*, 2023 WL 3852694, at *3-4 (N.D. Cal. June 5, 2023) (finding the plaintiff's evidence she did not "recall" signing the agreement to be insufficient to dispute contract formation).

As a last-ditch effort to avoid her contractual agreements, Plaintiff's declaration makes broad, general statements that managers supposedly had access to her and other Crewmembers' Workday accounts, but these statements do not contradict Raising Cane's specific evidence of the dates and times Plaintiff accessed her Workday account and electronically signed her two arbitration agreements. Plaintiff attests that she recalls "an instance in 2024" while she "was outside taking orders" that her manager asked Plaintiff to log into Workday. (Plaintiff Decl. ¶ 7.) Plaintiff's evidence does not connect this unspecified "instance" to July 27, 2024—Plaintiff's first day of work when she was onboarding and training but before the Hayward restaurant even opened to the public on August 5, 2024—when she accessed her Workday account and signed the 2024

Agreement during the onboarding process.[5] Not only does this evidence fail to create a material dispute of fact as to whether Plaintiff electronically signed the 2024 Agreement, it has no bearing whatsoever on whether she was the individual who accessed her Workday account seven months later on February 19, 2025, when she signed the 2025 Agreement. Moreover, Plaintiff attests that managers "common[ly]" assisted her and other Crewmembers with completing documents "during orientation and training," but Plaintiff's only allegation of such assistance is limited to "food-preparation certification courses" having nothing to do with arbitration agreements. (Plaintiff Decl. ¶ 8.) This evidence does not even suggest that the purported managerial assistance was taking place within the environment of Plaintiff's Workday account or that she was even signed into Workday while completing food-preparation certification courses. These statements, even if true, simply do not bear on whether the electronic signature data for Plaintiff's 2024 Agreement was her act and, because the evidence is limited to "onboarding and training," has no connection whatsoever to Plaintiff's electronic signing of the 2025 Agreement in February 2025.[6]

### B. The FAA Requires Severance and Enforcement of the Delegation Clause

Plaintiff does not dispute that each of the arbitration agreements plainly state they are governed by the FAA. (*See* Wynn Decl. ¶ 10, Ex. C, 2025 Agreement ("This Agreement, . . . will be governed by and enforced under the Federal Arbitration Act ('FAA'; 9 U.S.C. § 1et seq.)"), ¶ 11, Ex. D, 2024 Agreement (same).) The FAA created a body of federal substantive law. *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984). Under this body of law, courts must analyze the enforceability of an arbitration provision in a contract

---

[5] It is not possible that Plaintiff was "outside taking orders" in the drive-thru on July 27, 2024, because the Hayward restaurant at which she worked did not open to the public until Monday, August 5, 2024. (Plaintiff Decl. ¶ 3; *see also* article: https://www.ktvu.com/news/raising-canes-opening-hayward.)

[6] Furthermore, this evidence does not remotely support the sweeping statements asserted in the Opposition that "Defendant's managers routinely accessed [Plaintiff's] Workday account and completed documents on her behalf," or that Raising Cane's had a "company-wide practice" of completing documents for Crewmembers. (Opp. at 8:18-19, 9:5.)

separately from any other aspect of the contract in which the arbitration provision is contained. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448-49 (2006) (reaffirming rule from *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) that the FAA requires the court to sever the arbitration provision from the remainder of the contract and enforce it according to its terms). This severability rule applies equally to a delegation clause nested within an arbitration agreement. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (finding it "makes no difference" for application of the severability rule that the arbitration provision (a delegation clause) is contained in a broader arbitration agreement). Plaintiff concedes this point. (Opp. at 17:19-22.)

A delegation clause is enforceable unless it is shown that it is not clear and unmistakable or it is revocable under state law. *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 241 (2014). The delegation clauses here are enforceable as clear and unmistakable delegations. (*See* Wynn Decl. ¶ 10, Ex. C, 2025 Agreement ("Additionally, the arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or waiver of this Agreement."), ¶ 11, Ex. D, 2024 Agreement (same).)

First, the evidence discussed above (and in the Motion) establishes that Plaintiff entered into each of her arbitration agreements, so her defense to the delegation clauses based on contract formation fails.

Second, Plaintiff's remaining argument fails to establish, let alone explain how, the delegation clauses are not clear and unmistakable *and* revocable under state law. The Opposition fails to advance any argument that the delegation clauses are not clear and unmistakable. (*See* Opp. at 18:13-27.) Next, Plaintiff expressly invites the Court to contravene the FAA's severability rule by evaluating the delegation clauses "as a whole" with the rest of the agreements in which they are contained. (Opp. at 18:24-27.) *Rent-A-Center* prohibits this approach. *See* 561 U.S. at 71-72 (applying the severability rule to delegation clause contained in an arbitration agreement). Plaintiff also challenges the

delegation clauses on the grounds that *other terms* are supposedly substantively unconscionable, but she does not explain how those terms specifically render the *delegation clauses* unconscionable. Plaintiff's argument fails even under her own cited authority in which the Ninth Circuit reversed the district court's order finding the delegation clause substantively unconscionable. *Holley-Gallegly*, 74 F.4th 997, 1003 (9th Cir. 2023). In that case, the Ninth Circuit, citing *Rent-A-Center*, explained that a challenge to the enforcement of a delegation clause based on the presence of an "unrelated" term must explain how that term specifically "make[s] the delegation unconscionable." *Id.* at 1002; *see also id* at 1003 ("Neither of the above outcomes has any bearing on whether ***the delegation of arbitrability to the arbitrator*** would be unconscionable.") (emphasis in original). Here, the Opposition offers no argument that the enforceability of the Class Action Waiver, California PAGA Individual Action Requirement, or with respect to the 2025 Agreement only, the MAD Procedures, could somehow render unconscionable a delegation of issues of "interpretation, applicability, enforceability, or waiver" to the arbitrator. Accordingly, all issues delegated to the arbitrator under Plaintiff's agreements should be arbitrated.

### C. <u>The Arbitration Agreements, As a Whole, Are Not Unconscionable</u>

Even if the Court reached the question of whether the arbitration agreements are enforceable as a whole—an issue the agreements expressly delegate to the arbitrator—the Court should reject Plaintiff's unconscionability arguments.

#### 1. Any Procedural Unconscionability Is Minimal

An arbitration agreement presented to an employee on a take-it-or-leave-it basis does not "per se" render the agreement unenforceable. *Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1122 (1999). This Court has already decided, along with the great majority of courts, that the adhesive nature of an arbitration agreement only establishes a "low" degree of procedural unconscionability. *Shamblin v. Andy Frain Servs., Inc.*, 2024 WL 1199478, at *3 (E.D. Cal. Mar. 20, 2024) (Calabretta, J.).

Accordingly, if any procedural unconscionability is found here, it is low or minimal.

The Court should reject Plaintiff's attempt to show oppression or surprise in the way the arbitration agreements were presented to Plaintiff. Plaintiff alleges that she had to sign documents (that she does not identify as either of her arbitration agreements) which, according to Plaintiff, she "understood to mean that refusing could cost my me job." (Plaintiff Decl. ¶ 9.) However, Plaintiff presents no facts to support this subjective belief to actually establish any oppression beyond being adhesive as a condition of employment. *See Pinnacle Museum Tower Assn.*, 55 Cal. 4th at 247 ("Oppression occurs where a contract involves lack of negotiation and meaningful choice").

The evidence also does not support Plaintiff's claim of surprise. Plaintiff does not contradict Raising Cane's evidence that the arbitration agreements were presented to her within tasks on Workday and that the agreements were set apart from other documents within those tasks. (*See* Wynn Decl. ¶¶ 6, 11, Ex. A.) The arbitration agreements were presented with a link to access and review the agreements, "Instructions" directing Plaintiff to review the agreements, and a signature statement explaining the import of agreeing to arbitrate, i.e., Plaintiff would be required to arbitrate claims against Raising Cane's. This uncontradicted evidence demonstrates the arbitration agreements were not "buried among an avalanche of paperwork" (Opp. at 11:11-12) as might be the case when multiple documents are presented to an employee in hard-copy, paper format without the benefit of separate instructions and a signature statement separately guiding the employee through the signature process for each document as the evidence shows was the case here. Tellingly, Plaintiff concedes that each of the arbitration agreements were presented to her as separate, stand-alone documents and even complains that the process was "oversimplified" such that the process was somehow unconscionable. (*Id.* at 11:10, 18) ("standalone arbitration agreement" and "oversimplified" signature process).

**2. Plaintiff Failed to Establish Any Substantive Unconscionability**

Given that any procedural unconscionability is minimal, Plaintiff must demonstrate

a high degree of substantive unconscionability to establish her unconscionability defense. *Armendariz v. Foundation Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (explaining weighing of evidence of procedural and substantive unconscionability using a sliding scale). Plaintiff's unconscionability defense fails, however, because neither arbitration agreement contains any substantively unconscionable terms.[7]

a. Arbitration Initiation Procedures Are Not Unconscionable

Plaintiff directs this challenge at the 2025 Agreement without citing any legal authority for her claim that an agreement allowing the parties to attempt to resolve their disputes informally over a 30-day period—"***after a party initiates the claim by making a written Demand for Arbitration***"—is one-sided.[8] (*See* Wynn Decl. ¶ 10, Ex. C at p. 3 (emphasis added). Plaintiff erroneously claims that "arbitration demands cannot be filed" during the cooling off period (Opp. at 12:25-26), misrepresenting the plain language of the agreement (quoted above) to the Court. These provisions apply equally to all parties to the 2025 Agreement and are not unconscionable.

b. The Mass Arbitration Demands Procedures Are Not Unconscionable

The 2025 Agreement, but not the 2024 Agreement, contains a provision entitled "Administration of Mass Arbitration Demands Procedures" or "MAD Procedures." Plaintiff offers no authority discussing mass arbitration procedures in support of her unconscionability challenge, nor does this provision operate as Plaintiff contends. First, the MAD Procedures apply only "[i]f 10 or more claimants submit Requests for Arbitration or seek to file arbitrations raising similar claims and are represented by the same or

---

[7] The first three unconscionability arguments raised by Plaintiff, see below, are directed only at the 2025 Agreement. Plaintiff challenges the 2024 Agreement only on the basis of the amount of discovery provided and judicial review of an arbitration award.

[8] The Opposition asserts that the 2024 Agreement "impose(s) rigid initiation rules," (Opp. at 12:22) but provides no argument to support this assertion. Neither agreement imposes any requirements that do not apply to a court-filed complaint, i.e., must be filed within the applicable limitations period, must be served on the other party, must identify the claims and their factual bases, and must identify the relief sought. (*See* Wynn Decl. ¶ 10, Ex. C at p. 3, ¶ 11, Ex. D at p. 2.)

coordinated counsel." (Wynn Decl. ¶ 10, Ex. C at p. 4.) Plaintiff presents no evidence that the MAD Procedures apply here. Second, the MAD Procedures provide for a consolidated proceeding of 10 cases to be resolved through arbitration. (*Id.* at p. 5.) Nowhere in the 2025 Agreement does it state that the outcome of any one of these arbitrations will bind or influence the outcome of the other 9 (or any subsequent arbitrations). Accordingly, the MAD Procedures do not dispel with individual adjudication of Plaintiff's or any other person's claims. *See Atkins v. Amplitude, Inc.*, 2025 WL 2521732, at *5 (N.D. Cal. Sept. 2, 2025) (finding batched arbitration proceedings not substantively unconscionable because agreement prohibited any preclusive effect in any other proceeding or other party); *Davis v. Experian Information Sols., Inc.*, 2025 WL 2998157, at *6 n.7 (N.D. Cal. Oct. 24, 2025) (finding *Atkins*' reasoning persuasive because nothing in the agreement before the court "would impose a preclusive effect"). Moreover, nothing in the 2025 Agreement suggests that resolution of 10 cases in a "single consolidated proceeding" (Wynn Decl. ¶ 10, Ex. C at p. 5) means anything more than reducing fees and consolidating claims before a single arbitrator. *Davis*, 2025 WL 2998157, at *6. Third, the mediation after the first batch of arbitrations is completed is not binding on any party and therefore does not do away with individualized resolution nor does the mediation process require all claims to be resolved in an identical, non-individualized fashion.

c. Plaintiff's Choice-of-Law Argument Fails

Plaintiff does not dispute that each of Plaintiff's arbitration agreements provide that it shall be "governed by and enforced under the Federal Arbitration Act ('FAA'); 9 U.S.C. § 1et seq." (*See* Wynn Decl. ¶ 10, Ex. C, 2025 Agreement ("This Agreement, . . . will be governed by and enforced under the Federal Arbitration Act ('FAA'; 9 U.S.C. § 1et seq.)"), ¶ 11, Ex. D, 2024 Agreement (same).) This broad incorporation of the entire FAA is sufficient for the FAA's substantive procedural provisions to apply to the exclusion of any state procedural law. *See Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1122

(2006) (finding "no ambiguity" that the parties intended to adopt "the FAA—all of it" based on provision stating the arbitration would be held "pursuant to the FAA").

Plaintiff directs this challenge only at the 2025 Agreement, but provides no authority to support her contention that the fallback provision in this agreement for application of the Texas Arbitration Act only "[i]f the FAA does not apply" (Wynn Decl. ¶ 10, Ex. C at p. 5) is unconscionable. Plaintiff cites a single, inapplicable case concerning forum selection clauses (*see* Opp. at 15:27-16:4), but the 2025 Agreement calls for the arbitration to be held "in the county where you last worked" for Raising Cane's (*Id.* at p. 4), i.e., in California.

d. Plaintiff's Discovery Limitations Argument Fails

Authorities enforcing agreements providing for "default" discovery (with procedures for additional discovery) foreclose Plaintiff's unconscionability argument because her agreements provide for an adequate amount of discovery. Discovery limitations are an integral and indispensable part of the arbitration process. *Poublon v. C.H Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017) (citing United States California Supreme Court precedent); *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 504 (2024) (citing *Armendariz* for the proposition that "parties to an arbitration clause can agree to something less than the full panoply of discovery provided in the Code of Civil Procedure") (internal quotations omitted). Controlling Ninth Circuit authority instructs courts (and arbitrators) to evaluate provisions limiting discovery based on (1) the amount of default discovery permitted by the agreement, (2) the standard for obtaining additional discovery, and (3) whether the plaintiff has demonstrated that the challenged discovery limitations will prevent her from adequately arbitrating her statutory claims. *Poublon*, 846 F.3d at 1270.

The 2024 Agreement permits "discovery authorized under the Federal Rules of Civil Procedure." (Wynn Decl. ¶ 11, Ex. D at p. 3.) Surely Plaintiff does not suggest that Congress has created an inadequate means for discovery.

The 2025 Agreement also provides for sufficient default discovery, including depositions of three (3) fact witnesses, depositions of any expert witnesses, unlimited

requests for the production of documents, five (5) interrogatories, and the right to subpoena witnesses and documents. (Wynn Decl. ¶ 10, Ex. C at p. 4.) This is a greater amount of default discovery than the agreement enforced in *Poublon*, which did not provide for any interrogatories. *See Poublon*, 846 F.3d at 1271. Noticeably absent from the Opposition is citation to any legal authorities finding discovery provisions inadequate to vindicate statutory rights and therefore substantively unconscionable.

Moreover, both agreements permit the arbitrator to authorize additional discovery if "warranted by the circumstances of a particular case." (Wynn Decl. ¶ 10, Ex. C at p. 4, ¶ 11, Ex. D at p. 3.) This standard is nearly identical to a discovery provision recently upheld by this Court. *See Hicks v. Utiliquest, LLC*, 736 F. Supp. 3d 849, 867 (E.D. Cal. 2024) (Calabretta, J.) (providing for additional discovery "warranted by the circumstances of *the* particular case") (emphasis added).

Plaintiff fails to put forth evidence under the controlling standard that either of her agreements would prevent her from arbitrating her claims. This unconscionability challenges necessarily fails.

e. Plaintiff's Judicial Review Argument Fails

Lastly, Plaintiff's frivolous judicial review argument must be rejected. Plaintiff concedes that both agreements require the arbitrator to issue a written decision or award stating the essential findings of fact and conclusions of law and that a court shall have the authority to enter judgment upon the arbitrator's award. (Opp. at 16:7-10.) Nothing in the agreements prevent judicial review, which is available as a matter of law. *See* 9 U.S.C. §§ 9-11 (providing for procedures for confirming, vacating, and modifying arbitral award).

Moreover, Plaintiff's cited authorities merely confirm that the requirement that the arbitrator's award be in writing and state the findings of fact and conclusions of law—which the agreements expressly provide for here—allow "judicial review to be successfully accomplished." *See, e.g.*, *Armendariz*, 24 Cal. 4th at 107.

**3. Any Unconscionable Term Can Be Cured by Severance**

The agreements delegate the final decision-making authority over their enforceability to the arbitrator. However, even if the Court reaches Plaintiff's unconscionability argument and finds that any provision is unconscionable, that provision could be severed and the remainder of the agreements enforced. As California's Supreme Court recently stated, courts should consider severance provisions reflecting the parties' intent than an agreement be cured by severance to ensure enforcement. *Ramirez*, 16 Cal. 5th at 517.

**D. <u>The Class Action Waiver Provision Must Be Enforced</u>**

The Supreme Court has long upheld class action waiver provisions in arbitration agreements. *See generally AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). More recently, the Supreme Court held that class action waiver provisions are enforceable because the FAA requires arbitration agreements to be enforced as written. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 524 (2018) ("[T]he law is clear: Congress has instructed that arbitration agreements like those before us must be enforced as written.").

Here, Plaintiff makes no challenge to the enforceability of the class action waiver provision in the 2024 Agreement. The MAD Procedures in the 2025 Agreement do not conflict with the class action waiver provision as they are easily read in harmony. Plaintiff and Raising Cane's agreed to arbitrate their claims against each other on an individual, non-class basis. If, and only if, a mass arbitration is commenced do the MAD Procedures come into play and even then, they do not do away with individualized adjudications.

**E. <u>A Stay Is Mandatory Pending Completion of Arbitration</u>**

The FAA and Supreme Court precedent mandate a stay of this action if the Court orders any disputes to arbitration. The FAA states that a district "shall" stay the action pending the completion of arbitration when a party requests a stay as Raising Cane's does here. 9 U.S.C. § 3. The Supreme Court explained that "[j]ust as 'shall' means 'shall,' 'stay' means 'stay'" within the meaning of Section 3 of the FAA. *Smith v. Spizzirri*, 601 U.S. 472,

476 (2024); *see also id.* at 476 ("Here, as in other contexts, the use of the word 'shall' 'creates an obligation impervious to judicial discretion.'"). Accordingly, the FAA "compels the court to stay the proceeding." *Id.* at 478.

Plaintiff opposes a stay based on facts not relevant to this action and based on authorities outside of the arbitration context that do not address a stay under the FAA. Both of Plaintiffs' cited authorities evaluated whether subject matter jurisdiction existed only *after* the plaintiffs filed an amended complaint stripping the federal courts of subject matter jurisdiction, but Plaintiff has filed no such amended complaint in this action. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) ("When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says."); *Faulk v. JELD-WEN, Inc.*, 159 F.4th 618, 620 (9th Cir. 2025) ("The [plaintiffs] amended their complaint to remove all class action allegations."). Moreover, neither of these authorities considered or addressed the FAA. A stay furthers the FAA's structure and purpose which, among other things, allows a party to petition the district court for an order confirming an arbitration award. *Smith*, 601 U.S. at 478 (discussing relation of the mandatory stay under Section 3 and enforcement of arbitral award under Section 9 of the FAA). Plaintiff's jurisdictional question, if any exists, should only be addressed *after* arbitration is completed when either Plaintiff or Raising Cane's petition the Court for an order confirming the arbitration award. *See Badgerow v. Walters*, 596 U.S. 1, 16-17 (2022) (explaining the facts establishing a jurisdictional basis must be present on the face of the application or petition to confirm an arbitration award); *see also Tesla Motors, Inc. v. Balan*, 134 F.4th 558, (9th Cir. 2025) (reversing order confirming "a zero-dollar award" not meeting minimum requirements for traditional diversity jurisdiction).

## IV. CONCLUSION

Raising Cane's respectfully requests that the Court grant the motion and stay the action in its entirety pending the outcome of arbitration.

Dated: December 18, 2025

MORGAN, LEWIS & BOCKIUS LLP

By: /s/Carrie A. Gonell
Carrie A. Gonell
David J. Rashé
Attorneys for Defendant
RAISING CANE'S USA, L.L.C.

## PROOF OF SERVICE

I am a resident of the State of California, employed in the County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 600 Anton Blvd., Suite 1800, Costa Mesa, California 92626.

On December 18, 2025, I served on the interested parties in this action the within document(s) entitled:

**DEFENDANT RAISING CANE'S USA, L.L.C.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

[ X ] **BY EMAIL:** the parties listed below were served electronically with the document(s) listed above by e-mailed PDF files on December 18, 2025. The transmission was reported as complete and without error. My electronic notification address is 600 Anton Blvd., Suite 1800, Costa Mesa, CA 92626. My e-mail address is patricia.martin@morganlewis.com.

[ X ] **BY E-SERVE:** the parties listed below were served electronically with the document(s) listed above by e-mailed PDF files through **Pacer**, one of the Court's e-Service providers, on December 18, 2025.

| | |
|---|---|
| **MOON LAW GROUP, P.C.**<br>Kane Moon, Esq.<br>Allen Feghali, Esq.<br>Jacquelyn P. VanEmmerick, Esq.<br>Nichelle Christopherson, Esq.<br>725 S. Figueroa Street, Suite 3100<br>Los Angeles, CA 90017<br>Tel: 213.232.3128<br>Fax: 213.232.3125 | *Attorneys for Plaintiff ELIZABETH XATRUCH*<br><br>Email:<br>kmoon@moonlawgroup.com<br>afeghali@moonlawgroup.com<br>jvanemmerik@moonlawgroup.com<br>nchristopherson@moonlawgroup.com |

[ X ] **STATE:** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

[ X ] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on December 18, 2025, at Costa Mesa, California.

Patricia Martin

Patricia Martin